**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re: BAYCOL PRODUCTS LITIGATION | ) | MDL No. 1431 (MJD/JGL) |
| This Document Relates To: | ) | |
| Joseph Landrieu<br>01-MD-01431-MJD | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DISSOLUTION OF MDL NO. 1431 AND SUGGESTION OF REMAND TO THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION SPECIFICALLY AS TO PLAINTIFF JOSEPH LANDRIEU**

## I. INTRODUCTION

The Joseph Landrieu, by and through the undersigned Counsel, respectfully submits this Memorandum for Dissolution of MDL No. 1431 and Suggestion of Remand to the Judicial Panel on Multidistrict Litigation Specifically as to Plaintiff Joseph Landrieu pending in this MDL bearing action number 01-MD-01431-MJD. Mr. Joseph Landrieu has a severely limited life expectancy and is currently receiving chemotherapy for cancer.

At the beginning of this MDL, defendants argued that this Court's sole function was to conduct common discovery and then remand all cases back to the transferor courts pursuant to *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956 (1998). As Mr. Beck for Bayer stated at the April 15, 2003 hearing:

> The Court's made tremendous progress in terms of generic fact discovery, which, of course, by its nature is all one-way discovery from

> us, but also a part of this Court's job is to complete the generic discovery so that the cases can be remanded to the trial courts around the country so that the case-specific discovery can be done in the Central District of California and the Northern District of Illinois and these cases can be tried.
>
> * * *
>
> We think that the Court's, that one of the Court's principal responsibilities and we would suggest in an MDL the Court's principal responsibility, is to get the generic discovery done so that the cases can be remanded to the trial courts around the country…

April 15, 2003 Tr. at pp. 22-23 (emphasis added).

Now, however, defendants are asking this Court to continue far beyond common or core discovery and handle all case-specific discovery for over 8,000 individual claims and conduct advisory *Daubert* hearings. Counsel believes that this is manifestly improper and that all cases should now be transferred back to the transferor courts and this MDL dissolved.

## II. THIS COURT PREVIOUSLY HAS DETERMINED THAT THE ISSUES, FACTS AND LAW IN THE CASES ARE OVERWHELMINGLY INDIVIDUAL AND SHOULD BE REMANDED.

Understandably, defendants are extremely pleased with the proceedings before this MDL court. As Mr. Beck for Bayer has stated, "this MDL has been a tremendous success." (Dec. 19, 2005 Tr. at 67). As Mr. Magaziner for GSK stated: "this MDL is making more progress than any other MDL I have ever heard of in getting rid of cases that have no merit and no value…." (Feb. 9, 2005 Tr. at 27)[1]. But, of course, it is NOT the function of an MDL court to rid itself of cases a defendant thinks have no value or

[1] Defendants settled virtually all rhabdomyolysis cases for about $1.2 billion. Of course, the majority of those cases were settled beyond the jurisdiction of this Court.

merit. If that were the case, almost every action brought by a plaintiff would be dismissed since defendants rarely think any claim has value. The function of an MDL is to provide justice to the litigants before it, not to close the doors to the courthouse by allowing defendants to make the prosecution of moderate injury cases so expensive and burdensome as to effectively deny plaintiffs due process and their day in court.

These cases have been pending for well over four years. There are over 3,000 cases pending in this MDL, involving the claims of over 8,000 plaintiffs. All common or core discovery has been completed. The parties are at a defining moment in this MDL.

Early in this MDL, this Court expressly recognized that, in addition to the fact that each case has individual factual issues, each case also has individual legal issues. In denying class certification, this Court stated as follows:

> Applying this analysis [*Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618 (8th Cir 2001)] to the facts of this case, it is clear <u>that this factor supports application of the state law in which the plaintiff resides</u>, as Baycol was prescribed and ingested in the state of the plaintiff's residence, and the alleged injury occurred in the state of the plaintiff's residence. (Emphasis added.)
>
> The advancement of the forum's government interest factor generally weighs in favor of application of the state law in which the plaintiff lives and in which the injury occurred. *See, e.g.*, *Hughes, supra*; *Nodak, supra*. <u>In the present case, as the injury occurred in the state of plaintiff's residence, the substantive law of the state of plaintiff's residence should be applied to their claims</u>. (Emphasis added.)
>
> * * *
>
> Defendants argue that the applicable state laws controlling the claims of the personal injury class differ from jurisdiction to jurisdiction and that the issues are too complex for class treatment. Defendants point out that application of comment k of § 402A of the Restatement of

> Torts (Second) to prescription drugs and devices varies from state to state.
>
> * * *
>
> Plaintiffs' claims of failure to warn turn on what Defendants knew at the time Baycol was prescribed. As the class members were prescribed Baycol at different times, the issue of Defendants' knowledge will differ from case to case. The same is true for the claims based on negligence. For example, negligence claims depend on individual facts—whether there is a breach of duty or the foreseeability of harm will depend on what Defendants knew or should have known at the time Baycol was prescribed and whether Defendants acted reasonably based on the knowledge it had at the time. (Emphasis added.)

*In Re Baycol Products Litigation*, 218 F.R.D. 197, 207-208 (D. Minn. 2003).

Thus, this Court has already held the issues in these consolidated cases are overwhelmingly individual. This is law of the case. The different laws of the 50 states will have radically different impacts on the remaining cases. There are no more common questions, either factual or legal. Since the common or core discovery has been completed, there is no reason whatsoever for this MDL to keep these cases or to continue in existence. The principles of due process counsel immediate remand to the courts of origin where the various substantive state laws can be applied.

Remand now is also consistent with this Court's prior guidance. This Court previously has stated its intention to remand cases once common discovery was completed. At the February 9, 2005 Status Conference, the Court stated as follows:

> THE COURT: The difference between the Pennsylvania cases and the MDL cases is that at least they're in their home jurisdictions and under their—the law of that state those matters could be dismissed without prejudice; whereas, the cases here are being dismissed with prejudice. That's a big difference.

> MR. HOEFLICH: That's a fair point to make, Judge. The cases in Philadelphia have been dismissed without prejudice. I would note, though –
>
> THE COURT: So the MDL participants are being penalized differently than if they were in their home jurisdiction.
>
> I don't mean to stop you. I have read your papers and I certainly know the position of Bayer, but my question—and tell me if I am reading you wrong. My understanding is nothing less than a rhabdo case, no cases that are less than a rhabdo case will be settled, they will be tried by Bayer. And so if that's the case, **why shouldn't I send these cases back, allowing them to be worked up in their transferor jurisdiction, and be done with this?**
> **Because I have** accomplished**—because this is a new way of running an MDL**, I think the end game was incorporated in the settlement process. You settled the major, major cases and so what is left are cases that Bayer has looked at, you have done your evaluation, and you feel that plaintiffs are going to have to come forth and make their proof.
>
> And if that's the case, **I should not be a filter, a higher filter than how a state court would handle it in their own jurisdiction where these cases originally should be**. And so the question is, why should I be the penalizer to the plaintiffs? (Emphasis added.)
>
> If that's the case, there is not going to be a, quote, unquote, another end game. I see the dynamic of you have made your end game by settling at premium prices the rhabdo cases and the death cases. That's the end game as far as I am concerned.
>
> MR. HOEFLICH: If—
>
> THE COURT: Let me finish. And there's not going to be the other type of end game that has been in other MDLs where all of a sudden everything comes together and money is paid out, because the strategy that you have laid out that has—would fall apart if there was some type of money end game here in the MDL. **And so if that's the case, these cases should just go back.** (Emphasis added.)

Feb. 9, 2005 Tr. at pp. 17-19.

> THE COURT: What other jurisdictions do to handle these cases, that doesn't mean that that's a violation of defendants rights. It's just like I

> could have group trials here if I wanted to. They have been in federal court too.
>
> So, I'm not sending them to Iran. **I am sending them back to the transferor jurisdictions who have policies and procedures and due process for both the plaintiffs and defendants**. (Emphasis added.)

*Id*. at p. 22.

However, as this Court knows, the cases were not, in fact, remanded in February, 2005 because the parties sought a global settlement. As indicated by Mr. Zimmerman at the December 19, 2005 Status Conference, Mr. Beck has said there would not be any further settlement ever and discussions of settlement were over. Dec. 19, 2005 Tr. at p. 53.

### A. <u>December 19, 2005 Status Conference</u>

At the December 19, 2005 Status Conference where settlement was discussed, there also was some discussion of remand issues. The Court made the following comments:

> THE COURT: We have had an interesting year. The record really doesn't show that for over a year that the Court has had both sides talking to each other with the Court's presence and we've had conferences in Miami and in Chicago and also in Minneapolis trying to see whether or not a settlement could be reached on some of these cases.
>
> I believe both sides have put forth a very good effort. At this point it's clear that it is the Court's job to get these matters ready for remand and that will include case-specific reports and any *Daubert* issues that have to be heard by this Court.

Dec. 19, 2005 Tr. at pp. 70-71.

As developed more fully below, plaintiffs agree that this Court must "get these matters ready for remand." Plaintiffs suggest rolling remands over the next 30 days. As also discussed below, the plaintiffs do not believe there are "any Daubert issues that have to be heard by this Court." The time for remand is now and the time for dissolution of this MDL is now.

## III. THE VAST MAJORITY OF THE REMAINING CASES ARE SO-CALLED NEGATIVE VALUE CASES.

Mr. Beck has made it crystal clear that there never will be a settlement of the remaining cases and any further discussions are a waste of time. According to the defendants, the remaining non-rhabdo cases have no value. Mr. Beck repeatedly has called these cases "bogus" or worthless cases. (Dec. 19, 2005 Tr. at pp. 32, 69). *See also* Tr. of Feb. 9, 2005 Hearing at p. 24. Indeed, Mr. Beck has spent the better part of the past four and one-half years regaling this Court with what he believes is the frivolity of plaintiffs' cases.

Most of the remaining muscle injury cases are so-called negative value cases. With defendants' aggressive litigation strategy and scorched earth policy, it is clear that for a plaintiff to go to trial and verdict, the cost to the plaintiff's attorney could be in excess of $100,000 per case whereas it is unlikely that the damages in many remaining cases will exceed that amount. *See* generally this Court's Class Certification Order at 22. PTO 94.

These factors fundamentally distinguish this case from cases such as PPA or *St. Jude Medical*, where the comparatively few remaining cases each had the potential for

significant damages. In addition, the defendants have discussed the *Diet Drugs* case, *In Re Diet* Drugs, 2003 U.S. Dist. LEXIS 18069 (E.D. Pa), where a class was certified and the Court found common or core issues to be broad. More significantly, the *Diet Drug* Court then declined mass remands because it had a massive global settlement to administer, something this Court does not have. In addition, here, unlike in *Diet Drugs*, it is the entire PSC and the Co-Lead Counsel who are moving for remand and dissolution.

## IV. CASE LAW REQUIRES REMAND AT THIS TIME.

The instant MDL presents a common core of liability issues. This Court, in denying joinder and class certification motions, found that each of the remaining cases presents non-core liability issues, such as causation and damage.

Remand at this time is consistent with the purpose of this multi-district litigation. 28 U.S. C. § 1407(a), the statutory authority for this Court's handling of this MDL, provides for "coordinated or consolidated pretrial proceedings" when there are "one or more common questions of fact" in multiple pending cases. In light of that purpose, the focus of this MDL has been those common questions of fact and law, not the multitude of noncommon issues which exist in the consolidated cases.

To effectuate that purpose, courts have recognized that when discovery on common issues is completed and the remaining discovery is merely case-specific, the reasons for consolidated proceedings in the multidistrict forum have vanished. The specter of inconsistent rulings on identical issues or duplicative discovery no longer exists, and concomitantly, the benefits of being included in the multidistrict litigation have disappeared. As a result, remand to the transferor court is appropriate when

discovery on the common issues has been completed, even though some pretrial matters remain as to the noncommon issues. *See McKinney v. Bridgestone/Firestone, Inc. (In re Bridgestone/Firestone, Inc.)*, 128 F.Supp.2d 1196 (S.D. Ind. 2001); *In re TMJ Implants Products Liability Litigation*, 872 F.Supp. 1019 (D. Minn. 1995), *aff'd*, 97 F.3d 1050 (8th Cir. 1996); *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969 (J.P.M.L. 1979); *In re Air Crash Disaster at Tenerife, Canary Island on March 27, 1977*, 461 F.Supp. 671 (J.P.M.L. 1978); *Lenzer v. Forgan (In re Evergreen Valley Project Litigation*), 435 F.Supp. 923 (D. Mass. 1977). *See also In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000).

*In re Patenaude*, 210 F.3d 135 (3d Cir. 2000) is particularly instructive. That case arose out of the asbestos litigation. Some 1,000 cases, in fact had been remanded. *Id*. at 141-42. The primary reason why the court did not grant the further remands requested at this time was because settlement discussions in the MDL were active and ongoing and producing significant results. *Id.* at 139-40 and 142 n. 4. Here, of course, all settlement discussions have ended and there will be no settlement of remaining cases.[2] In a discussion of legislative history, the Court further noted as follows:

> The Plaintiffs [in Patenaude] also point to legislative history suggesting that Congress contemplated that additional discovery might be conducted following remand as evidence that such individual discovery is not appropriate for the transferee court. *See* Multidistrict Litigation: Hearings Before the Subcommittee on Improvements in Judicial Machinery of the Committee of the Judiciary, 89th Cong. 56 (1966); H.R.Rep. No. 1130, 1968 U.S.C.C.A.N. at 1901-02. The House Report

[2] The present motion herein is entitled to far greater weight than in *Patenaude* because, unlike in *Patenaude*, it is brought by the entire Plaintiffs' Steering Committee and the Co-Lead Counsel.

> states that "the committee recognizes that in most cases there will be a need for local discovery proceedings to supplement coordinated discovery proceedings, and that consequently remand…for this purpose is desirable." H.R.Rep. No. 1130, 1968 U.S.C.C.A.N. at 1901-02. Furthermore, during the hearings, the following exchange occurred:
>
> SENATOR TYDINGS: The intent of the coordinating committee…apparently, is that the necessary additional discovery with regard to issues of fact not national or not common to other cases could be conducted once the case was remanded…
>
> Do you agree that the intent of the bill is to allow additional discovery after remand…and if so, is the language of the legislation sufficiently broad to permit that? (Emphasis added.)
>
> JUDGE MURRAH: Yes

*Patenaude*, 210 F.3d at 145. Thus, *Patenaude* instructs that once common discovery has been completed, mass remands are appropriate as demonstrated by the 1,000 or so cases remanded and that the ONLY reason to preclude further remands is where active and on-going settlement discussions are occurring.

*In re Factor VIII or IX Concentrate Blood Products Litigation*, 169 F.R.D. 632 (N. D. Ill. 1996) succinctly explained:

> The multidistrict proceeding is not the appropriate mechanism for the conduct of case-specific discovery. By definition, that discovery is not of general interest to the parties in all of the individual cases which comprise the MDL.

169 F.R.D. at 638. One Judicial Panel commented:

> If and when the transferee judge determines that any action or claim is, in fact, ready for trial, or otherwise ready for remand because the common pretrial proceedings pertaining to that action or claim have been completed and the action or claim would no longer benefit from inclusion in the coordinated or consolidated pretrial proceedings, the transferee judge may suggest to the Panel that the Panel remand the action or claim to its transferor district.

*In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. at 975. *See also In re Evergreen Valley Project*, 435 F.Supp. 923, 924 (J.P.M.L. 1977) ("It is not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel, but rather that the transferee judge in his discretion will conduct the common pretrial proceedings with respect to the actions and any additional pretrial proceedings as he deems otherwise appropriate.")

Indeed, the MDL panel in the *Bridgestone* case declined to remand one of the consolidated cases with the following explanation:

> When, as here, pre-trial proceedings in the MDL have not been concluded, the question of whether remand is nevertheless appropriate is left to the discretion of the Panel. [citations omitted] The exercise of that discretion generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL. [citations omitted]. <u>The Panel has discretion to remand, for example, when everything that remains to be done is case-specific</u>.

*In re Bridgestone/Firestone, Inc.*, 128 F.Supp.2d 1196, 1197 (S.D. Ind. 2001).

Not only is resolution of case-specific issues as part of the MDL unnecessary to fulfill the purpose of § 1407, but retention of the cases for that purpose can create the same inefficiencies which Congress hoped to eliminate by passing 28 U.S.C. § 1407 and violates the due process rights of individual plaintiffs.

> Adopting defendants' view of MDL proceedings would mean that discovery concerning the "one or more common issues of fact" contemplated by § 1407 would not be completed, or perhaps even commenced, until the case-specific discovery was finished. This would prolong the MDL indefinitely, force the parties to await the completion of discovery that would be of no relevance to their particular cases and frustrate the possibility of settling individual cases between completion of the common discovery and completion of the case-specific

> discovery. Although we have not made a formal decision on the matter as yet, and will hear from the parties before we do, our present inclination is to suggest to the Panel after completion of the common-issue discovery that the individual cases be remanded to the transferor districts. We see no point in retaining jurisdiction of the cases during the case-specific discovery, which can probably be best conducted after remand.

*In re Factor VIII or IX Concentrate Blood Products Litigation*, 169 F.R.D. at 638-39.

The United States Supreme Court's decision in *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956 (1998) buttresses the conclusion that these cases should be remanded to the transferor courts for resolution of case-specific discovery. In *Lexecon*, the Supreme Court halted MDL courts' practice of assigning certain cases to themselves for trial rather than remanding for trial in the transferor court. The Court held that that practice contravened the statute's clear terms that cases be remanded back to the transferor court for trial. It disapproved of any reading of § 1407 which expanded the grant of authority to the MDL transferee court past the clear terms of the statute or which contravened the intent of that statute.

Similarly, here, 28 U.S.C. § 1407 should not be read to expansively increase the transferee court's authority or jurisdiction. That statute simply allows cases with common issues to be consolidated for pretrial proceedings. Neither the terms of § 1407 nor its purpose supports utilization of the MDL for the purpose of resolving case-specific issues, rather than its primary purpose of coordinating pretrial handling of common core-liability issues.

In the end, the question whether certain issues should be included within the scope of an MDL proceeding turns on "whether [a] case will benefit from [those] further

coordinated proceedings as part of the MDL." *McKinney v. Bridgestone/Firestone, Inc.*, 128 F.Supp.2d at 1197.

There are really only two basic reasons why an MDL court should ever even consider conducting case-specific discovery. The first is where the same case-specific issues may recur in the remaining cases. That, of course, is not the case here where all remaining issues go to individual issues of causation and damages. The second is "where the possibility exists that even individual settlement negotiations will be more efficient if facilitated by a judge who is intimately familiar with the general issues and many of the parties." In that circumstance, courts have recognized that it could make sense to keep those cases before the transferee court until the very end of pretrial proceedings. *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000). Of course, that reason no longer applies here either. Two years ago, in one of the cases in which this Court denied remand, a reason given was because the parties might benefit from future settlement discussions. (Order in Case Nos. 02-445, *Terry G. Hayes v. Bayer*, June 29, 2004). Mr. Beck has made it clear there will be no settlement and no more settlement discussions. Therefore, this second reason does not exist for this Court to hang on to the remaining cases.

The clear import of 28 U.S.C. § 1407(a) is that MDL courts should not unnecessarily hang on to cases. This provision states that the transferee court must remand actions "at or before the conclusion of…pretrial proceedings." (Emphasis added).

Quite simply, core or common discovery has been completed and further centralized pretrial proceedings are unnecessary, unwarranted and unhelpful.

Depositions of defendant's corporate witnesses have been completed along with document production. Further, a document repository is available for the review of defendants' records. Expert reports have been exchanged between the parties. Depositions of plaintiffs' general causation and liability experts have been completed as well.

The stated objective of an MDL transfer is to avoid duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort on the part of the parties, the attorneys, the witnesses, and the courts. *See In re Plumbing Fixture*, 298 F.Supp. 484 (J.P.M.L. 1968). Maintaining this MDL is no longer warranted as the objectives of MDL transfer have been achieved and common discovery is now complete and all settlement discussions have ended.

## V. INAPPROPRIATE, ADVISORY AND EXTREMELY EXPENSIVE *DAUBERT* HEARINGS ARE UNNECESSARY AND UNWARRANTED.

There is no basis and little authority for this Court to hold *Daubert* hearings. As this Court candidly acknowledged, any such rulings would be "advisory" only. Tr. of Dec. 19, 2005 at p. 10. Under such circumstances, there is no reason for this Court to hold such hearings since *Daubert* issues may be applied differently in the individual trial courts throughout the country. For example, when the defendants in the *Parlodel* litigation tried to argue that an Eighth Circuit decision excluding expert testimony carried weight in an Alabama case under Alabama law, the Court swiftly rejected that idea. *Brasher v. Sandoz Pharmaceutical Corp.*, 160 F.Supp.2d 1291, 1298 (N.D. Ala. 2001).

*See also Hollander v. Sandoz Pharmaceutical Corp.*, 289 F.3d 1193, 1206 (10th Cir. 2002), *cert denied* 537 U.S. 1088 (2002).

The cost to the PSC and plaintiffs of litigating such an “advisory” opinion in the MDL will be enormous and entirely wasteful. The constitutionality of such an “advisory” opinion is also questionable. Early in its history, the Supreme Court held that it had no power to issue advisory opinions, *Hayburn's Case*, 2 Dall. 409 (1792), as interpreted in *Muskrat v. United States*, 219 U.S. 346, 351--353, 31 S.Ct. 250, 251—252 (1911), and it has frequently repeated that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them. As the Court noted in *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404 (1971), a federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them. *Local No. 8--6, Oil Chemical and Atomic Workers Intern. Union v. Missouri*, 361 U.S. 363, 367, 80 S.Ct. 391, 394 (1960). Its judgments must resolve "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *North Carolina*, 404 U.S. at 246 *quoting Aetna Life Ins. Co. v. Hartford*, 300 U.S. 227, 241, 57 S.Ct. 461, 464 (1937). See also *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330 (1975); *U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 113 S.Ct. 2173 (1993).

While a few MDL courts have conducted some limited *Daubert* hearings, specifically PPA, that was done in the context of very serious cases with common issues and where the parties apparently agreed to be bound by the results.

Furthermore, many states do not require expert opinions and have differing standards for the admissibility of expert testimony. Indeed, Rule 702 of the Federal Rules of Evidence provides, in pertinent part, that "if scientific, technical, or other specialized knowledge will *assist the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise." (Emphasis added). Here, virtually all of the remaining claims are based on state law tort principles. Moreover, the trier of fact in each case will be different. As argued by defendants in the class certification motions, and determined by this Court in its Order denying class certification, the claims involve numerous individual issues, particularly with respect to causation and damages. Additionally, there are variations in the state laws underlying the individual plaintiffs' claims. What may or may not assist the trier of fact in any particular case, also depends on the elements of the individual plaintiff's state law claim. Thus, *Daubert* hearings, even if they were intended to be more than merely advisory, would be unnecessary and of no value.

If there were ever a case where *Daubert* hearings should not be conducted, it is this *Baycol* MDL. First, any such results will be advisory only. Second, this Court knows that defendants will re-litigate any adverse *Daubert* determination by this Court in every single individual case. Third, many states do not require such opinions so any *Daubert* determination by this Court would be of no value. Fourth, in any event, the

validity, or lack thereof, of various experts' opinions must also take into account the individualized nature of each plaintiff's state law claims.

## VI. ALL CASES WHICH WERE FILED IN STATE COURTS AND REMOVED SHOULD BE REMANDED TO TRANSFEROR COURTS FOR REMAND TO STATE COURTS.

A party invoking removal jurisdiction of the federal courts bears a heavy burden. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60 (1990). The removal statute must be strictly construed against removal. *See Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986). If federal jurisdiction is even "doubtful," the case must be remanded. *Williams v. Tri-County Community Center*, 323 F.Supp. 286, 288 (S.D. Miss. 1971). An appellate court, even *sua sponte*, can examine the question of subject matter jurisdiction, find it lacking, and thus render all of the court's decisions and orders null and void. *American Fire & Casualty v. Finn*, 341 U.S. 6 (1951). In this case, most cases filed in state court did not meet the jurisdictional threshold of $75,000 and must be remanded.

## VII. JOSEPH LANDRIEU'S CASE SHOULD BE REMANDED BACK TO THE TRANSFEROR COURT DUE TO THE DEMINISHING HEALTH OF THE PLAINTIFF AND THE EXEGENT NEED FOR TRIAL

Plaintiff Joseph Landrieu has sustained diminished health since his ingestion of Baycol in 2001. Since this time his doctors have given reduced his overall health status significantly and currently his long term prognosis is greatly shortening. The testimony of Mr. Landrieu at the trial of this matter is crucial for the outcome of this case. However, the defendants have dragged the discovery process on with no possible end in

sight. Despite repeated inquiries from the Lieutenant Governor Mitch Landrieu, nephew of Mr. Joseph Landrieu and Senator Mary Landrieu, niece of Mr. Joseph Landrieu counsel has been unable to report that any progress has been made with Mr. Landrieu's case other than continuing and open discovery. Defendants have agreed to schedule Mr. Landrieu's deposition and such is presently being placed on counsel's calendars as of this motion.

The Transferor Court, the Eastern District of New Orleans, is open and operating fully after the hurricane. It is ready and able to not only receive the remand of Mr. Landrieu's case but Mr. Landrieu is concerned about having such case heard while he is still able to be of assistance in the trial of his own injuries at the hands of Bayer. For these reasons this honorable court is urged to remand the above action to the transferor court, The Eastern District of Louisiana so it may be promptly set for trial.

## VIII. CONCLUSION.

In sum, with generic discovery completed and settlement discussion having come to an end, there is no reason for this MDL to continue or for Mr. Landrieu's case to remain at the MDL. It should be dissolved and his case remanded to the transferor courts.

Dated: November 2, 2006

/s/ Daniel E. Becnel, Jr.

LAW OFFICES OF DANIEL E. BECNEL, JR.
Daniel E. Becnel
106 West Seventh St., P.O. Drawer H
Reserve, LA 70084
Telephone: (985) 536-1186