# Exhibit H
# Part 2 of 2

Landrieu had chronic back pain even before he started Baycol?

A. Yes.

Q. And look at the second page of this two-page report or record dated April 4, 2000. You see under Number 2 Assessment and Plan?

A. Yes.

Q. Where it says that "It was suggested he return to see his orthopedist, but he was not terribly interested in that. Given more time, more information." You see that?

A. Yes.

Q. So would you agree with me, Doctor, that there's certainly an indication that Mr. Landrieu's back pain was started and had been going on for some time even before Baycol?

A. Yes.

Q. So is there any information whatsoever, Doctor, where you can indicate that back pain had anything to do with -- Mr. Landrieu's back pain had anything to do with his taking of Baycol?

A. No.

Q. Now, you see also in this report, do you not, that Mr. Landrieu is taking Zocor?

coronary artery disease, that would be a candidate in your mind as someone who should be taking the statin medicine?

A. Definitely.

Q. Now, Mr. Landrieu had indicated to you that he had a heart attack or at least a heart -- yes, a heart attack on May 13, 2001. Doctor, with respect to his heart attack, am I correct in understanding that you don't relate Baycol in any way to his heart attack in May of 2001, do you?

A. I think it would be improbable.

Q. And the more probable cause of his heart attack in May of 2001 is simply the fact that he has this ongoing coronary artery disease?

A. Yes.

Q. And you see where it even tells you he places a stent in the vessel, and that stent would probably tell you that what's going on is he has this plaque buildup in a vessel and that's what they did, they went in and placed a stent to open up the vessel?

A. Yes.

Q. That's what you would believe if you looked at it?

A. Yes.

Q. And you had the records of this from Doctor Myers, so I guess in review of the records, is that one reason why when you talked about what may have been caused by Baycol, either caused or contributed by Baycol, one of the things you don't list was his heart attack is because in your review of the records you found that it's likely that Baycol had nothing to do with his heart attack?

A. That is correct.

Q. Again, I think we talked about this. With respect to Parkinson's, you can say more likely than not that Baycol didn't either cause or contribute to his Parkinson's disease, is that correct?

A. It's not the cause of it. Again, the symptoms that I described as adverse reactions for Baycol are also part of the symptomatology of Parkinson's disease. So the issue is whether or not it's a contributing factor to these symptoms.

Q. Okay, to the symptoms. But as far as caused or contributed to the progression or the triggering of Parkinson's disease, would you

tell me that it's more likely than not it didn't either cause or contribute to the triggering or the progression of Parkinson's disease?
A. To my knowledge, there is no indication that Baycol would cause Parkinson's disease.
Q. Or contribute to the progression of Parkinson's disease?
A. I don't know of any articles to that effect.
Q. There's a history that you have in this typewritten document, your expert report, SPFS000002jgl, and it indicates he presented with a subjective history of dark urine. I'm trying to find out, did you see dark urine on any medical record?
A. I don't recall that. I think that the -- there is a notation on my record that his urine was brown. Apparently the patient felt that there was a significant change in the color of his urine, so he reported it as such, but I don't think you saw it anywhere else.
Q. With respect to that dark urine, what you're saying is, is that he told you that at some point he had dark urine, but as far as your looking at the medical records, you didn't see

that in any of the medical records?
A. That's correct. That was the patient's statement.
Q. Do you know how long it was that he had this dark urine?
A. No, I do not.
Q. And this indication of kidneys, Doctor, I'm going to show you -- this is a record which was taken -- I guess what we will do is maybe we will mark this one as Doctor Reyes/Landrieu Exhibit 4. It's got Bates JB000007jgl and JB000008jgl, and this is a LabCorp document that is dated October 11th of 2001. You see that?
A. Yes.
Q. This Doctor Reyes Exhibit Number 4 that I'm showing you, Doctor, do you see where it has the creatinine levels that have been taken?
A. Yes.
Q. Doesn't it show that the creatinine levels are normal?
A. Look at the BUN. Isn't it also normal?
A. Yes.
Q. So would that indicate to you, Doctor, insofar as October of 2001, that there is no

dysfunction -- with respect to this lab analysis, there is no dysfunction of the kidney?
A. That's correct.
Q. Look at the second page of Doctor Reyes Number 4. Do you see where it has the CK testing that was done?
A. Yes.
Q. Isn't the CK testing within normal limits?
A. Yes.
Q. Doesn't that indicate to you that with respect to any sort of muscle breakdown, that certainly there is no indication from a lab analysis that there is any sort of muscle breakdown?
A. That is correct.
Q. Doctor, this would have been -- according to your records, these lab analyses would have been taken approximately a month and a half after Mr. Landrieu had stopped taking Baycol, so would you agree with me that with respect to Mr. Landrieu, that there is no indication or no evidence that Mr. Landrieu suffered any sort of kidney damage as a result of taking Baycol?

A. The lab tests were normal, and that would indicate that there was no kidney damage at the time.
Q. And since this is after the fact where he stopped taking Baycol, it would indicate to you, wouldn't it, Doctor, with respect to Baycol, that more likely than not the Baycol did not damage Mr. Landrieu's kidney?
A. That is correct.
Q. And with respect to muscle damage, permanent muscle damage, would you also agree that it's more likely than not that Baycol did not cause any permanent muscle damage to Mr. Landrieu?
A. The lab work would indicate that, yes.
Q. And that's what you would look at, wouldn't you?
A. Yes.
Q. And if indeed he did have some muscle damage, you would expect the CK levels to be abnormal?
A. That's correct.
Q. Were you also aware, Doctor, that Mr. Landrieu had these degenerative changes that were going on in both his back and his neck? And I'll show you these so that you can have this documentation. I'll show you Exhibit Reyes

second paragraph, "It is my opinion that this patient has suffered injuries or damages related to this patient's ingestion of Baycol. These injuries include myalgia, progressive muscle weakness and cramps while on Baycol."
You see that?
A. Yes.
Q. First of all, other than myalgia, progressive muscle weakness and cramps, is it your opinion that as far as you're concerned, you don't know of any other damage that Baycol may have caused to Mr. Landrieu?
A. I think these were the symptoms that the patient complained of that were caused by Baycol, and I had no reason to implicate any other symptoms in the relationship to what has been known to be an adverse affect of Baycol.
Q. What I'm asking you is, other than myalgia, progressive muscle weakness and cramps, after your speaking with the patient and reviewing the records, there's nothing else that you feel may have been caused or contributed by Baycol other than myalgia, progressive muscle weakness and cramps, is that correct?
A. That is correct.

Q. Then we talk about myalgia. Is it your understanding that with respect to myalgia, that there is nothing to indicate, from the standpoint of Mr. Landrieu, that the myalgia that he may have had while he was on Baycol caused any sort of permanent muscle damage?
A. There's no indication of any permanent muscle damage.
Q. And the way we know that is by the fact that we saw the CK test, correct?
A. Yes.
Q. And the same with muscle weakness, that insofar as muscle weakness is concerned, there is nothing to indicate that Baycol caused any sort of permanent muscle damage to Mr. Landrieu, is that correct?
A. Yes.
Q. And the cramps. Mr. Landrieu has testified that he has had cramping for years, and I can read you the testimony if you'd like. Let's see if I can find it. It says -- the question that is asked on Page 102, Line 24 of Mr. Landrieu's deposition --

MR. MORELAND:

That's Mr. Landrieu's deposition and

potassium - 8 ounces of water." Answer: "That's what they try to get me to do every day." Question: "Do you recall when you first started getting cramps?" Answer: "Oh, cramps, I used to get cramps when I was 20 years old. Because if you overexercise a little bit, you're going to get cramps, real bad cramps. So your hands used to just freeze up like that. Until you take the calcium or potassium, it's crazy, it goes away. It's almost instantly. Twenty, thirty seconds." Question: "How long have you been taking the calcium and the potassium?" Answer: "I don't do that much anymore because I haven't been bothered with cramps lately." Question: "So the cramping is mainly in your hands?" Answer: "It used to be in my chest, it used to be in my arms, my hands, particularly right across the chest."

So my question would be: Doesn't it indicate to you that Mr. Landrieu has had cramping for, as he says, since he was twenty years old?

A. Yes.

Q. If that's the case and his testimony is

correct, would that indicate to you that more likely than not that Mr. Landrieu's cramps are not caused by Baycol?

A. Yes.

Q. Doctor, with respect to the treating physicians, is it fair to say that you yourself give great weight to the testimony or to the opinions of Mr. Landrieu's treating physicians?

A. Yes.

Q. So if they indicated in their testimony that they saw nothing to indicate that Baycol caused any problems to Mr. Landrieu, would you give those opinions great weight?

A. Yes.

Q. Doctor, is it your opinion that if indeed Mr. Landrieu had myalgia as a result of Baycol, that likely the myalgia ended when Mr. Landrieu stopped taking Baycol?

A. I think that is the usual pattern.

Q. And from the standpoint of reviewing the records or talking to Mr. Landrieu, do you have anything to indicate that myalgia lasts past -- as related to Baycol, it lasts past the time he was taking Baycol?

# Exhibit I

**IN RE: BAYCOL LITIGATION**
**MDL No. 1431**

# PLAINTIFF'S FACT SHEET

Each Plaintiff who used Baycol must complete this Fact Sheet. In completing this Fact Sheet, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can. You may and should consult with your attorney if you have any questions regarding the completion of this form.

If you are completing the form for someone who has died or who cannot complete the Fact Sheet him/herself, please answer as completely as you can for that person. You may attach as many sheets of paper as necessary to answer these questions.

## I. Case Information

A. Please state the following for the civil action that you filed:

1. Case caption: *Landrieu v. Bayer,*

2. Civil Action No: 01-CV- 3312

3. Court in which action was originally filed: E. Dist., of Louisiana

4. Name, address, telephone number, fax number and e-mail address of principal attorney representing you:

Daniel E. Becnel, Jr.
Name
Law Offices of Daniel E. Becnel, Jr.
Firm
106 West Seventh Street, P.O. Drawer H
Street Address
Reserve, LA 70084
City, State and Zip Code
(985) 536-1186 (985) 536-6445
Telephone Number Fax Number
dbecnel@rtconline.com
E-mail address

B. If you are completing this Fact Sheet in a representative capacity (on behalf of the estate of a deceased person or a minor), please state:

1. Your name: __________

2. Address: __________

3. In what capacity are you representing the person?____________

4. If a court appointed you to act on behalf of the estate of the deceased person or minor, state the court and date of appointment:____________

5. Your relationship to deceased or represented person:____________

6. If you represent a decedent's estate, state the date of decedent's death:____________

**The remainder of this Fact Sheet requests information about the person who used the Baycol. If you are completing this Fact Sheet for someone else, please assume that "you" means the person who used Baycol.**

## II. Personal Information

A. Name: Joseph G. Landrieu

B. Have you ever used any other names and, if so, when: n/a

C. Current Address: 2400 St. Charles Avenue, New Orleans, LA 70130

D. How long have you been living at this address? 4 years

E. List any prior addresses during the last ten (10) years and the dates when you lived at those addresses. If you cannot recall all of the details regarding those addresses, please provide as much information as you can. 4600 Venus Street, New Orleans, LA 70130 (33 years)

F. Social Security Number: [redacted]-6189

G. Date and place of birth: [redacted]/1927, New Orleans, LA

H. Sex: Male x Female____

I. Marital Status: Married

J. If applicable, name of current spouse and date of marriage: Phyllis Coldewy Landrieu 10/09/1954

K. If applicable, name of former spouse(s) and date(s) of marriage within the last ten (10) years:__________

L. Name(s) of children and date(s) of birth, if applicable:
Michael & Stephen, [redacted]/1955; Renee, [redacted]/1956; Gary, [redacted]/1957
Joanne, [redacted]/1959, Judy, [redacted]/1960; David, [redacted]/1962; Kenneth, [redacted]/1963
Gregory, [redacted]/1966, Scott [redacted]/64

M. Current employer:

Name: retired
Address:
Job Duties:
Job Title:
Dates Employed:
Full-time or Part-time:
Name of Supervisor:

Are you making a claim for lost wages or lost earning capacity? _____ Yes __x__ No

N. Please complete the following information regarding any employers (other than your current employer) that you have had in the last ten (10) years:

1. Name:
   Address:
   Job Duties:
   Job Title:
   Dates Employed:
   Full-time or Part-time:
   Reason for Leaving:
   Name of Supervisor:

2. Name:
   Address:
   Job Duties:
   Job Title:
   Dates Employed:
   Full-time or Part-time:
   Reason for Leaving:
   Name of Supervisor:

O. Please provide the following information about your education:

1. High School

Name: Jesuit High School
Address: 4133 Banks Street, New Orleans, LA 70119
Grade completed: 12th
Year graduated: 1944

2. Did you attend school beyond high school? __x__ Yes _____ No

If "yes," please complete the following for each school that you attended after high school:

| Name of School | Address | Dates of Attendance | Degree Awarded | Major or primary field |
|---|---|---|---|---|
| Tulane University | 6823 St. Charles Ave. New Orleans, LA 70118 | 1944-45 | n/a | Engineering |
| Loyola University | 6363 St. Charles Ave. New Orleans, 70118 | 1948-52 | Bach. Accounting | Accounting |

P. Have you used a computer at any time during the past five (5) years?
__x__ Yes _____ No

If "yes," please complete the following:

1. Did you have e-mail? _____ Yes __x__ No

2. Did you have internet access? __x__ Yes _____ No

3. Have you ever visited any website containing information regarding Baycol, statins or the treatment of high cholesterol or high triglycerides?

_____ Yes __x__ No _____ I don't know

4. Have you ever visited any chat rooms where Baycol, statins, or the treatment of high cholesterol or high triglycerides was discussed?

_____ Yes __x__ No _____ I don't know

5. Have you ever communicated via e-mail or chat room about Baycol, statins or the treatment of high cholesterol or high triglycerides?

_____ Yes __x__ No _____ I don't know

Q. Has any insurance or other company provided medical coverage to you or paid medical bills on your behalf in the ten (10) years before you took Baycol through the present?

__x__ Yes ______ No

If "yes, please complete the following:

| Name of Company | Address |
|---|---|
| Tenet Choices 65 | 200 W. Esplanade Ave. Ste. 600<br>Kenner, LA 70065 |
| Medicare | HCFA<br>Baltimore, MD 21244 |
| | |

R. Have you applied for worker's compensation, social security, or state or federal disability benefits in the past ten (10) years?

__x__ Yes ______ No

If "yes," please complete the following for each application. If you cannot recall all of the details regarding such application(s), please provide as much information as you can.

1. Date (or year) of application: 12/28/92
2. Type of benefits: social security, medicare
3. Amount awarded:______
4. Basis of your claim:______
5. If denied, reason for denial:______
6. To what agency or company you submitted your application (*e.g.*, Pennsylvania Division of Social Security): HCFA, Baltimore, MD

S. Were you ever rejected or discharged from military service for any reason relating to your health or physical condition?

______ Yes __x__ No

If "yes," then state the reason for the health-related rejection or discharge and when this happened.

______

______

T. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury, illness or physical harm?

______ Yes __x__ No

If "yes," please state the court in which the lawsuit was brought and the civil action or docket number assigned to each such claim, action, or lawsuit. If you cannot recall all of the details, please provide as much information as you can.

______________________________

______________________________

## III. Your Health Care Providers

A. Please provide the following information for each doctor, clinic or healthcare provider that you have seen or who has treated you during the last ten (10) years. If you cannot recall all of the details regarding the healthcare providers that you have seen, please provide as much information as you can.

1. Name: Dr. Jack Ruli
   Specialty, if any: Internal Medicine
   Address: 4405 N. I-10 Service Road W., Metairie, LA
   Phone: (504)455-0442
   Reason(s) for visit(s): General Checkup

   Medications prescribed or recommended: Procordia XL, Zocor, Methoprobol

2. Name: Dr. Charles Billings
   Specialty, if any: Orthopedist
   Address: 3800 Houma Blvd., Metairie, LA 70006
   Phone: (504) 780-2000
   Reason(s) for visit(s): Laminectomy & fusion 1984, Lower 4-5 in back

   Medications prescribed or recommended: ______________________________

3. Name: Dr. Noel Mills
   Specialty, if any: cardiac surgeon
   Address: retired
   Phone: retired
   Reason(s) for visit(s): heart by pass surgery

   Medications prescribed or recommended: provordia XL, methopropol

4. Name: Dr. David Myers
   Specialty, if any: General internal medicine
   Address: 3333 Bienville Street, New Orleans, LA 70119
   Phone: (504) 821-2893
   Reason(s) for visit(s): general checkup

   Medications prescribed or recommended: Lorressor, Procordia & Baycol

5. Name: Dr. Jerry Rosenberg
Specialty, if any: urology
Address: 3600 Prytania Street, New Orleans, LA 70115
Phone: (504) 891-6111
Reason(s) for visit(s): routine check-up

Medications prescribed or recommended:

6. Name: Joseph Bobrowski
Specialty, if any: general internal medicine
Address: 2820 Napoleon Avenue, New Orleans, LA 70115
Phone: (504) 897-4250
Reason(s) for visit(s): check-up

Medications prescribed or recommended: procordia, lopressor

7. Name: Do not recall, Gulfport Regional Hospital
Specialty, if any:
Address:
Phone:
Reason(s) for visit(s): cardiac stent, angioplasty (May 6, 2001)

Medications prescribed or recommended:

**[ATTACH ADDITIONAL PAGES, IF NECESSARY]**

## IV. Your Medical Background

A. Height: 6'1.5"

B. Current Weight: 192

C. Your Smoking History

1. Never smoked cigarettes x

2. Past smoker of cigarettes ______
Date on which smoking ceased ______
Amount smoked: _____ packs per day for _____ years

3. Current smoker of cigarettes______
Amount smoked: _____ packs per day for _____ years

4. Have you ever used any other form of tobacco (snuff, dipping, cigars)?

_____ Yes _____ No ______ I don't know

If "yes," please identify:

a. What form: chewing tobacco (occasionally); cigars (quit 1 year ago)
b. Dates of use: ____________________
c. Amount of use: ____________________

D. Alcohol Consumption

On average, how much alcohol do you drink?

_____ None
__x__ 1-5 drinks per week
_____ 6-10 drinks per week
_____ 10 or more drinks per week

E. Please provide the following information for each hospitalization that you have had during the last ten (10) years. If you cannot remember all of the details, please list as much information as you can.

1. Name of hospital: St. Charles General Hospital
Address: 3700 St. Charles Ave. New Orleans, LA 70115
Phone: (504) 896-3100
Reason(s) for hospitalization(s): lamenectomy

2. Name of hospital: Jo Ellen Smith
Address: 444 General Meyer Ave., New Orleans, LA 70131
Phone: 504-363-7011
Reason(s) for hospitalization(s): heart by-pass

3. Name of hospital: Gulfport General
Address: Gulfport, MS
Phone: ____________________
Reason(s) for hospitalization(s): Heart attack, angioplasty

**[ATTACH ADDITIONAL PAGES, IF NECESSARY]**

F. Please complete the following information for each surgery that you had in the last ten (10) years. If you cannot remember all of the details, please list as much information as you can.

1. Name of operation: double by-pass
   Name of surgeon: Dr. Noel Mills
   Address of surgeon: retired
   Reason for surgery:

2. Name of operation: Lamenctomy and fusion
   Name of surgeon: Dr. Charles Billings
   Address of surgeon: see *supra*
   Reason for surgery: back pain

3. Name of operation: cardiac stent and angioplasty
   Name of surgeon: do not recall
   Address of surgeon: do not recall
   Reason for surgery: heart pain

**[ATTACH ADDITIONAL PAGES, IF NECESSARY]**

G. If you have ever consulted a doctor, clinic or other healthcare provider concerning any kidney condition, illness or disease including kidney failure, polynephritis, nephrosclerosis, kidney stones, proteinuria or hematuria (blood in the urine), please complete the following. If you cannot remember all of the details, please list as much information as you can.

Name of doctor or facility: Dr. Jerry Rosenberg
Address: see *supra*
Date: 7/30/1993
Diagnosis: prostosis
Treatment:
Medications: noroxin
Did condition resolve? yes
Current status of condition: no problem

H. If you have ever consulted a doctor, clinic or other healthcare provider concerning any liver condition, illness or disease including but not limited to hepatitis, cirrhosis or fatty liver, please complete the following. If you cannot remember all of the details, please list as much information as you can.

Name of doctor or facility: n/a
Address:
Date:
Diagnosis:
Treatment:
Medications:
Did condition resolve?

Current status of condition:

I. If you have ever consulted a doctor, clinic or other healthcare provider about any musculoskeletal condition or disease including muscle pain or weakness, extreme fatigue, myopathy, polymyositis, fibromyalgia, arthritis, tendonitis, or other muscle related concerns or problems, please complete the following. If you cannot remember all of the details, please list as much information as you can.

Name of doctor or facility: Dr. Frank Oser
Address: 2633 Napoleon Ave., New Orleans, LA
Date: 2001
Diagnosis: Parkinson's Disease
Treatment: Selegeline and DOPA
Medications:
Did condition resolve? No
Current status of condition: under control

J. Have you had any of the following tests or procedures in the past ten (10) years?

| **Test/ Procedure** | **Yes** | **No** | **I don't know** |
|---|---|---|---|
| Creatine kinase (CK)/ Creatine phosphokinase (CPK) | | X | |
| EMG/Nerve conduction Studies | | | X |
| Cystoscopy | | X | |
| Liver biopsy | | X | |
| Other diagnostic test(s) or imaging of the kidneys, liver or muscles | | X | |

If "yes," please complete the following. If you cannot remember all of the details, please list as much information as you can.

a. Type of test:
b. Date administered:
c. Reason for test:
d. Facility name and address:
e. Ordering doctor:
f. Results/diagnosis:
g. Treatment:

**[ATTACH ADDITIONAL PAGES, IF NECESSARY]**

K. Have you been tested for any of the following in the last ten (10) years:

| **Condition** | **Yes** | **No** | **I don't know** |
|---|---|---|---|
| Diabetes | | X | |
| Atherosclerosis | | X | |

| Condition | Yes | No | I don't know |
|---|---|---|---|
| Myocardial infarction/ heart attack | | X | |
| Abnormal heart rhythm | | X | |
| Congestive heart failure | | X | |
| Angina | | | |
| Thyroid disorder | | | |
| Autoimmune disease | | | |

If you responded "yes" to any of the above, complete the following information for each condition. If you cannot remember all of the details, please list as much information as you can.

a. Type of condition and date of testing:__________
Testing doctor:__________
Treatment:__________

b. Type of condition and date of testing:__________
Testing doctor:__________
Treatment:__________

c. Type of condition and date of testing:__________
Testing doctor:__________
Treatment:__________

L. Have you ever been diagnosed as having:

| Condition | Yes | No | I don't know |
|---|---|---|---|
| High cholesterol | X | | |
| Elevated trigylcerides | Do not recall | | |
| Hypertension/high blood pressure | X | | |
| Obesity | | X | |
| Diabetes | | X | |
| Thyroid disorder | | X | |
| Autoimmune disease | | X | |
| Abnormal heart rhythm | X | | |
| Congestive heart failure | | X | |
| Angina | | X | |
| Myocardial infarction | X | | |
| Atherosclerosis | | X | |

If you responded "yes" to any of the above, please complete the following information for each condition. If you cannot remember all of the details, please list as much information as you can.

a. Condition and date of diagnosis:________________________
Name of diagnosing doctor:________________________
Treatment:________________________

b. Condition and date of diagnosis:________________________
Diagnosing doctor:________________________
Treatment:________________________

c. Condition and date of diagnosis:________________________
Diagnosing doctor:________________________
Treatment:________________________

**V. Baycol**

A. Have you ever taken Baycol? __x__ Yes _____ No

If "yes," then complete the following:

| **Dates of use** | **Dosage** | **Prescribed by (name and address)** | **Dispensing pharmacy (name and address)** |
|---|---|---|---|
| Do not recall | | Dr. David Myers | Walgreens |
| | | | |
| | | | |

B. Were you given any **written** instructions, warnings or other information regarding your use of Baycol?

_____ Yes __x__ No _____ I don't know

1. If "yes," when did you receive the information?____________________

2. Who gave you the information?____________________

3. If you no longer have the written information in your possession, please describe the written information that you received to the best of your ability.____________

C. Were you ever given any **oral** instructions, warnings or other information regarding your use of Baycol?

_____ Yes __x__ No _____ I don't know

1. If "yes," when did you receive them?____________________

2. Who gave them to you?____________________

3. Please describe the oral instructions you received to the best of your ability.______
____________________
____________________

D. Please list any prescription or over-the-counter drug, any dietary supplement, vitamin, or herbal remedy that you were taking at the same time you were taking Baycol.

| Name of Drug | Date(s) Taken | Prescribing Doctor | Name and Address of Pharmacy Where Obtained |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

VI. **Physical Injuries, Illness and Damages**

A. If you are making a claim for physical injuries or illness from taking Baycol, please describe the following:

1. Nature of physical injuries or illness: Extreme weakness in leg muscles
____________________

2. The date that you first became aware of the physical injuries or illness:__________
____________________

3. How you first became aware of the physical injuries or illness: __________
____________________

4. Whether those injuries or illnesses are continuing: yes
____________________
____________________

Did you see a doctor, clinic or other healthcare provider for the physical injuries or illness listed above?

__x__ Yes _____ No _____ I don't know

If "yes," please complete the following for each healthcare provider:

a. Name: Dr. David Myers

b. Address: 3333 Bienville Ave., New Orleans, LA 70119
c. Date of first consultation with that healthcare provider:________
d. Date of last consultation:________
e. Do you plan to continue to consult with that healthcare provider? _x_ Yes ___ No

B. Have you had any discussions with any doctor or other healthcare provider about whether Baycol contributed to your physical injuries or illness?

____ Yes _x_ No

If "yes," provide the doctor's or healthcare provider's name and address, and the date of that discussion.________

C. If you are making claims for out-of-pocket expenses as a result of taking Baycol, please complete the following:

1. For what: n/a
2. Amount of fees or expenses:________
3. Person or company paid or to be paid:________

D. If you are making a claim for emotional distress or psychological injuries, please complete the Supplemental Fact Sheet for Claims of Emotional Distress and Psychological Injuries and Harm.

E. Are there persons (other than those already identified in this Fact Sheet) whom you believe are witnesses to your claimed injuries or damages? If yes, please provide their name(s) and address(es):

1. Phyllis Landrieu, 2400 St. Charles Ave., New Orleans, LA 70130
2. Joanne Curren, 2842 Coliseum Dr., New Orleans, LA 70115
3. Renee Harmess, 4617 Prytania St., New Orleans, LA 70115
4. Gary Landrieu, 7323nWest Roadway, New Orleans, LA 70124
5. Moon Landrieu, 4301 South Prieur Street, New Orleans, LA 70115

## VII. Other Medications

Have you taken any of the following medications during the past ten (10) years? If you cannot recall all of the details requested, please provide as much information as you can.

| Drug | Yes | No | I don't know | If yes, date(s) taken and prescribing doctor | Name and address of pharmacy where obtained |
|---|---|---|---|---|---|
| **CHOLESTEROL-LOWERING DRUGS** | | | | | |
| Lescol [Fluvastatin] | | | | | |
| Lipitor [Atorvastatin] | X | | | | |
| Mevacor [Lovastatin] | | | | | |
| Pravachol [Pravastatin] | | | | | |
| Zocor [Simvastatin] | X | | | | |
| Niacin [Vitamin B3] | | | | | |
| LoCholest [Cholestyramine] | | | | | |
| Questran [Cholestyramine] | | | | | |
| Prevalite [Cholestyramine] | | | | | |
| **TRIGLYCERIDE-LOWERING DRUGS** | | | | | |
| Lopid [Gemfibrozil] | | | | | |
| Tricor [Femofibrate] | | | | | |
| Bezafibrate | | | | | |
| Ciprofibrate | | | | | |
| **ANTI-INFECTIVE DRUGS** | | | | | |
| Diflucan [Fluconazole] | | | | | |
| Erythrocin & Others [Erythromycin] | | | | | |
| Flagyl [Metronidazole] | | | | | |
| Nizoral [Ketoconazole] | | | | | |
| Sporanox [Itraconazole] | | | | | |
| **IMMUNO-SUPPRESSIVE DRUGS** | | | | | |
| Neoral [Cyclosporine] | | | | | |
| Sandimmune [Cyclosporine] | | | | | |
| **OTHER** | | | | | |
| Anticoagulants | | | | | |
| Heart Drugs | X | | | | |
| Thyroid Medications | | | | | |
| Other | | | | | |

## VIII. Family History

A. To the best of your knowledge have any of your children, parents, grandparents or siblings had diabetes, any type of kidney or liver disease, or any type of muscle disorder?

_____ Yes __x__ No _____ I don't know

B. If "yes," please complete the following:

Relative's name:______________________________
Relationship to you:______________________________
Type of health problem:______________________________
Date and cause of death, if applicable:______________________________

Relative's name:______________________________
Relationship to you:______________________________
Type of health problem:______________________________
Date and cause of death, if applicable:______________________________

Relative's name:______________________________
Relationship to you:______________________________
Type of health problem:______________________________
Date and cause of death, if applicable:______________________________

Relative's name:______________________________
Relationship to you:______________________________
Type of health problem:______________________________
Date and cause of death, if applicable:______________________________

## IX. Documents

Please provide a copy of all of your documents and things which fall into the categories listed below. This includes documents and things in your personal possession, as well as items being held for you by another person, including your lawyer or any relative.

1. A copy of all medical records (excluding psychiatric or psychological records) from any physician, hospital, clinic, healthcare provider or pharmacy that treated you, or filled your prescriptions, in the last ten (10) years.

2. If you have been the claimant or subject of any worker's compensation, Social Security or other disability proceeding, all documents relating to such proceeding.

3. All instructions, product warnings, package inserts, advertising materials, pamphlets, magazine or newspaper articles, internet information, promotional materials, any documents or materials from defendants, or pharmacy handouts that you have regarding Baycol.

4. Copies of the entire packaging, including the bottle, box and label for the Baycol you allege caused you injury and any remaining medication.

5. If you are claiming lost wages or a loss of earning capacity, your federal tax returns for each of the last five (5) years.

6. If you claim any loss from medical expenses, copies of all bills for which you are seeking reimbursement from any physician, hospital, pharmacy or other health care provider.

7. Copies of letters testamentary or letters of administration relating to your status as plaintiff.

8. Decedent's death certificate (if applicable).

9. All documents of any kind related to other drugs that you took at the same time you were taking Baycol.

## X. Authorizations

Complete and sign the attached Authorization for Release of Medical Records (No Psychological Injuries Claimed), and attached Authorization for Release of Employment and Unemployment Records (No Psychological Injuries Claimed).

If you have filed a Workers' Compensation or Social Security disability claim, please complete and sign the attached Authorization for Release of Workers' Compensation and Social Security Records.

## XI. Declaration

I declare under penalty of perjury that all of the information provided in this Plaintiff's Fact Sheet is true and correct to the best of my knowledge, information and belief, that I have supplied all the documents requested in Part IX of this Plaintiff's Fact Sheet, as required above.

Further, I acknowledge that I have an obligation to supplement the above responses if I learn that they are in some material respects incomplete or incorrect.

5/9/02 — Joseph Landrieu

Dated — Signature

**IN RE: BAYCOL LITIGATION**
**MDL No. 1431**

## SUPPLEMENTAL FACT SHEET FOR CLAIMS OF EMOTIONAL DISTRESS AND PSYCHOLOGICAL INJURIES AND HARM

I. Are you making a claim for mental, emotional, psychological or psychiatric injuries or illness from your use of Baycol? _x_ Yes ____ No

II. If you are making a claim for mental, emotional, psychological or psychiatric injuries or illness from your use of Baycol, please provide the following information:

1. Nature of the injury or illness: memory loss, confusion, anxiety ______________________________

2. The date you first became aware of this injury or illness:______________________________

3. How you first became aware of this injury or illness:______________________________

4. Whether (and if so, how) this injury or illness has changed over time:__________ unchanged ______________________________

III. If you have seen a doctor, clinic or any other healthcare provider for treatment of this mental, emotional, psychological or psychiatric injury or illness, please provide the following information:

1. Name:______________________________
2. Address:______________________________
3. Date of first consultation with that healthcare provider:______________________________
4. Date of last consultation:______________________________
5. Do you plan to continue to consult with that healthcare provider? ____Yes ___No

IV. Have you had any discussions with any doctor or other healthcare provider about whether Baycol contributed to your physical injuries or illness?

_____ Yes __x__ No

If "yes," provide the doctor's or healthcare provider's name and address, and the date of that discussion.______________________________

V. If you have experienced or have been treated for any mental, emotional, psychological, or psychiatric condition or problem (including depression) prior to your use of Baycol, please complete the following:

| Condition or problem for which treated | Dates of treatment | Treatment provider (name and address) |
|---|---|---|
| | | |
| | | |
| | | |

VI. **Documents**

Please provide a copy of all of your documents and things which fall into the categories listed below. This includes documents and things in your personal possession, as well as items being held for you by another person, including your lawyer or any relative.

1. A copy of all psychiatric or psychological medical records from any physician, hospital, clinic, healthcare provider that treated you in the last ten (10) years.

VII. **Authorization**

Complete and sign the attached Authorization for Release of Medical Records (Psychological Injuries Claimed), and attached Authorization for Release of Employment and Unemployment Records (Psychological Injuries Claimed).

VIII. **Declaration**

I declare under penalty of perjury that all of the information provided in this Plaintiff's Supplement Fact Sheet is true and correct to the best of my knowledge, information and belief, that I have supplied all the documents requested in Part VI of this Plaintiff's Supplemental Fact Sheet, as required above.

Further, I acknowledge that I have an obligation to supplement the above responses if I learn that they are in some material respects incomplete or incorrect.

5/9/02 — Dated

Joseph Landrie — Signature

# Exhibit J

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re BAYCOL PRODUCTS LITIGATION
JOSEPH LANDRIEU, ET AL *
* MDL NO. 1431
VERSUS * (MJD)
*
BAYER CORPORATION, ET AL * Case No.
* 02-CV-0160
*
* * * * * * *

COPY

Deposition of JOSEPH BOBROWSKI, M.D., St. Tammany Parish Hospital, 1202 South Tyler Street, Covington, Louisiana 70433, taken at St. Tammany Parish Hospital, commencing at 11:12 a.m., on Friday, the 17th day of August, 2007.

APPEARANCES:

LAW OFFICES OF DANIEL E. BECNEL JR.
(By: Kevin Klibert, Esquire)
106 West 7th Street
Reserve, Louisiana 70084
(Attorneys for Plaintiff)

CHAFFE McCALL, LLP
(By: John E. Olinde, Esquire)
1100 Poydras Street, Suite 2300
New Orleans, Louisiana 70163
(Attorneys for Defendant, Bayer Corporation)

JOSEPH BOBROWSKI, M.D.,

after having been first duly sworn by the above-mentioned certified court reporter, did testify as follows:

EXAMINATION BY MR. OLINDE:

Q. Doctor, I've already introduced myself. My name is John Olinde. I'm going to be asking you some questions today. It concerns your treatment and your examination of a patient of yours, Mr. Landrieu, Joseph Landrieu.

Just for housekeeping purposes, reading and signing your deposition, do you want to read and sign?

A. Yes.

Q. We're going to put as exhibits to your deposition -- we have the notice of deposition which is for here at the hospital, St. Tammany Parish Hospital for today's date and the time. Then we also have a subpoena to have you bring whatever records you might have and also to appear today.

We do not have a copy of your CV. I don't know whether you have it with you but because of that I'm going to have to ask you some questions about your background.

diarrhea, but he did suffer from constipation. Has bowel movements approximately every three days and he takes Milk of Magnesia for that. Also, he does not suffer from heartburn and he did not have blood in his stool.

Q. Then we have neurological. What do you have there?

A. That's where he complained of the tremor in his right hand. He said he had it for about six months and he is concerned this may be early Parkinson's disease. That's what the patient had related to me.

Q. Okay. Muscular, joints, bones, what is listed there?

A. One and a half years of limited neck leftward rotation due to stiffness and also frequent bilateral hip pain were his complaints.

Q. All right. So the -- he is saying to you that he's had this limited movement in his neck for the last one and a half years?

A. Right. You know, and I'm pretty liberal with rounding up figures there. And most patients can't remember the details of exactly when. If I put one and a half years, it's probably -- just kind of guessing, probably four

Q. So in other words, it flushes out of your system, so that would tell you whether or not it was related to the statin or not?

A. Yes. I don't know the exact mechanism or when the -- you know, I don't know the details of how long the drug stays in the body and all that kind of stuff. But what I would expect to see is if it was muscle pain associated with the drug with or without the enzyme elevations that once you stop the insulting drug the symptoms would go away. There may be cases of chronic permanent muscle damage. I'm not aware of them.

Q. Okay. You haven't had a patient like that?

A. Not that I can recall.

Q. And with respect to -- let's just take Mr. Landrieu's case. There's nothing in whatever treatment you provided to Mr. Landrieu or his examination which would lead you to believe a statin medicine was causing his problems?

A. It seems unlikely that there was one. I'm one to never rule things out though. So you can see I have a pretty extensive approach so, you know, that still was probably in there that he could be, you know, but it seemed more likely

that it was due to the documented osteoarthritis and the cervical disk disease and arthritis and the other Parkinson's things and stuff. I wouldn't have been worried about that. I wouldn't have been thinking about stopping his statin medication based on those findings at all.

Q. All right. But just as a physician, it's more likely than not, isn't it, Doctor, that the symptoms that he came to you with in October of 2001 more likely than not were not related to any statin medication?

A. I would agree with that, yes.

Q. Now, the -- when the -- you have this information -- when you saw Mr. Landrieu in October of 2001, at that time would you -- can you tell us at that time when you saw him he was not having rhabdomyolysis?

A. He was not having rhabdomyolysis, no. The labs, that's how I would have based that. I have never seen rhabdomyolysis without an elevated CPK. I have personally never seen that. I don't think that exists so --

Q. Okay. Well, isn't that actually the very definition of rhabdomyolysis is that you have to have an elevated CPK in order to even be

# Exhibit K

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re BAYCOL PRODUCTS LITIGATION

| | |
|---|---|
| JOSEPH LANDRIEU | * |
| | * MDL NO. 1431 |
| VERSUS | * (MJD) |
| | * |
| BAYER CORPORATION, ET AL | * Case No. |
| | * 02-cv-0160 |
| | * |
| * * * * * * | * |

ORIGINAL

Deposition of FRANK S. OSER, III, M.D., Ochsner Clinic Foundation, 1514 Jefferson Highway, New Orleans, Louisiana 70121, taken at Ochsner Clinic Foundation, commencing at 3:08 p.m., on Monday, the 23rd day of July, 2007.

APPEARANCES:

LAW OFFICES OF DANIEL E. BECNEL, JR.
(By: Kevin P. Klibert, Esquire)
106 West 7th Street
Reserve, Louisiana 70084
(Attorneys for Plaintiffs)

CHAFFE McCALL, LLP
(By: John F. Olinde, Esquire)
1100 Poydras Street, Suite 2300
New Orleans, Louisiana 70163
(Attorneys for Defendant, Bayer Corporation)

FRANK S. OSER, III, M.D.,
after having been first duly sworn by the above-mentioned certified court reporter, did testify as follows:

EXAMINATION BY MR. OLINDE:

Q. Doctor, I'm going to ask you some questions. My name is John Olinde. I represent Bayer Corporation in this case that's been filed by Mr. Landrieu.

And to start it out with reading and signing of the deposition, what would you like to do there? You want to waive it or you want to read and sign?

A. Okay. I guess I'll read and sign. It's always good to be on the safe side.

Q. Okay. Now, we had asked, Doctor -- I know we sent a subpoena for your records and I know that you have some records which are some that we have not been able to see yet.

What I do -- what I want to start out with is we're going to mark the deposition notice as -- we'll just mark it as Exhibit 1, Dr. Oser Exhibit 1 so we'll have that. And also attached -- and also another part of that is going to be the subpoena which we'll mark as

just a checklist in a sense.
A. Right. That is correct.
Q. All right. And do you go through all these with the patient?
A. The pertinent parts of it.
Q. And so when it says neck or arm pain, it has a yes but then it said, "Describe, arthritis of the neck." So that's what he, Mr. Landrieu --
A. Right.
Q. -- said was bothering him?
A. Yes.
Q. Back or leg pain, yes, and he says arthritis in the lower back.
A. Right.
Q. Do you remember anything else about that part of it?
A. No.
Q. And the other one circled is shaking or tremor of head or hands?
A. That's why he was in to see me, yes.
Q. And then these other indications, arm or leg weakness --
A. Apparently wasn't a problem for him.
Q. Okay. So the ones that have no circle would be those --

A. I would assume those are negative. I would assume.

Q. Okay. If he had circled them, obviously you would have asked him about it and questioned him about it.

A. Yes.

Q. And then this third page which has diagrams and little X marks --

A. Right.

Q. -- are those something that you do or does he do that too?

A. He does that.

Q. That's just going to show what he said before, the lower back pain and the neck pain.

A. That's exactly right.

Q. Now, after -- is this document which is Dr. Oser Number 4 -- does he fill that out before he sees you?

A. Yes.

Q. And then you see him and you go through your examination?

A. Correct.

Q. And your examination on 12/27/01, I have it down as F006JGL, and because it's difficult to read your handwriting --

A. My apologies.
Q. Well, not unusual for either doctors or lawyers. Let me ask you is the information which is on this page which has your handwriting on it -- does it also appear to be reflected in the letter that you were --
A. Right. In other words, this is like my notes and this is the official report.
Q. Okay. So after you do -- what we'll do then, Doctor, is maybe go through your letter to Dr. Bobrowski --
A. Right.
Q. -- which is for the sake of the record F0004JGL, and the letter is to Dr. Bobrowski and the date on it is what?
A. December 27th, 2001.
Q. Okay. Now, if you could, give us just a general -- the history that he provided.
A. Eight-month history of tremor in his right hand getting worse over time, having some trouble with coordination and initiating movement in the hand. A little bit of problem climbing stairs. No speech or swallowing problems. Then we reiterated his history of hypertension, heart disease, angioplasty, laminectomy, back surgery,

and that he had had a remote head injury when he was a teenager.

He told me what medicines he was taking, thinks he didn't have any alleges, didn't smoke, rarely drank. Family history of hypertension and his brother was starting to shake also.

Q. Now, you did a physical examination?

A. Neurological exam.

Q. Okay. Tell us what that involved.

A. Mental status examination is unremarkable. His vital signs were good. He had a little bit of slowing and sort of a decreased expressiveness of his face which is something we see in some of the Parkinson's patient population. His speech was okay. He had a little bit of tremulousness when he wrote but otherwise his handwriting looked okay. Cranial nerves are normal. He didn't have any focal weakness.

He did have a little bit of atrophy in the left leg which happened when I guess he must have had a disk problem and surgery, so he lost a little bit of muscle from there but he apparently has compensated over time.

Q. This is what he's already indicated in

Q. In all of your examinations, as I understand in you going through them, he never mentioned any sort of darkening brown of his left leg.
A. Didn't come up that I could recall.
Q. And myalgia, no indication whatsoever in any of your examinations or his complaints of myalgia.
A. Just talking about neck and back pain. He attributed it to arthritis.
Q. And cramping, no indication of cramps?
A. It was not an issue that I'm aware of.
Q. So he never suggested to you he had cramps?
A. No. It didn't come up.
Q. And you never on your physical examination -- ever found by touching or examination of any sort of cramping?
A. Didn't see it.
Q. So from all of your examination and treatment there was no evidence that you found of any symptom or problem that you treated Mr. Landrieu for which you would associate with Baycol?
A. I think I've answered that already, but

I'll do it one more time. Not that I'm aware of.

Q. Good. Okay.

MR. OLINDE: Thank you, Doctor. I appreciate your time. I think what we're going to do is try to get a copy of the records we don't have, if we could do that.

THE WITNESS: That's fine.

MR. MONTELARO: I have no questions.

MR. KLIBERT: I have a couple of questions.

EXAMINATION BY MR. KLIBERT:

Q. Doctor, my name is Kevin Klibert and I represent Mr. Landrieu.

Are you aware if Baycol is currently available?

A. I have no idea.

Q. And your first visit with Mr. Landrieu was in December of 2001; was that correct?

A. I'll have to look it up again. I think it was, but I want to make sure.

Q. Uh-huh.

A. I have December 27th.

Q. 2001?

# Exhibit L

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

IN RE: BAYCOL PRODUCTS LITIGATION MDL NO. 1431

This Document Relates to (MJD)

JOSEPH LANDRIEU

VERSUS CASE NO. 02-cv-0160

BAYER CORPORATION, et al

Deposition of PHYLLIS LANDRIEU, taken before Donna M. Ursin, certified Court Reporter, in and for the State of Louisiana in the Office of CHAFFE MCCALL, L.L.P., 2300 Energy Centre, 1100 Poydras Street, New Orleans, Louisiana on Thursday, the 30th day of August 2007.

APPEARANCES:

Representing the Plaintiff:

LAW OFFICES OF DANIEL E. BECNEL, JR.
BY: DANIEL E. BECNEL, JR., ESQ.
106 West 7th Street, PO Drawer H
Reserve, Louisiana 70084

Representing Glaxo Smith Kline:

ADAMS AND REESE, L.L.P.
BY: MS. CHRISTINE S. FORTUNATO
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139

ORIGINAL

PROCEEDINGS

MRS. PHYLLIS LANDRIEU, 2400 St. Charles Ave., New Orleans, Louisiana 70130, after having been first duly sworn by the above-mentioned Court Reporter, did testify as follows:

EXAMINATION

BY MR. OLINDE:

Q. Miss Landrieu, I've already introduced myself, and we met the last time for your husband's deposition, where you were in attendance for that deposition, correct?

A. Correct.

Q. I think you already heard what I'd asked your husband with respect to our ground rules; meaning, if I ask you a question, I need you to give a verbal response as opposed to nodding the head, that sort of thing.

A. Correct.

Q. Have you given a deposition before?

A. Once.

Q. What sort of case was that?

A. Something with the schoolboard.

Q. From a standpoint of this deposition today, if you don't understand one of my questions, just be sure and tell me that, all right?

A. Back when he was having his bypass surgery at Jo Ellen Smith, he was depressed and I requested medication, and he had to see a psychiatrist in the hospital in order to receive the medication.
Q. How about since then?
A. No.
Q. Is it Dr. St. Martin who is following your husband now with respect to the heart condition?
A. Yes.
Q. The Parkinson's, is there anyone in your husband's family that has Parkinson's?
A. No.
Q. Do you -- has anyone told you what the cause of the Parkinson's was?
A. I had a conversation with Dr. Patty Smith who told me that sometimes people have Parkinson's disease that is not visible or active, that can be affected by certain things and can trigger it.
Q. Did she indicate what could trigger it?
A. No.
Q. Has she ever told you that Baycol had anything to do with your husband's Parkinson's?
A. No.
Q. Has any physician ever told you that?
A. Not a physician treating my husband.

Q. You say not a physician treating your husband, who is the person that told you that?
A. Well, we heard it on the News.
Q. What News was that?
A. The National News report that people in the United States were dying from Baycol, and that it was being pulled off the market.
Q. Did you ever hear a News report where it said that Baycol caused Parkinson's disease?
A. No.
Q. Did you ever hear a News report that said Baycol aggravated heart disease?
A. No.
Q. How about News reports that said Baycol triggered Parkinson's disease?
A. We did some internet research about Baycol that indicated that some of the symptoms of the effects of Baycol were similar to symptoms of Parkinson's.
Q. Who are the persons that did the internet research?
A. I was.
Q. When did you do that?
A. Around the time of the story and since, I guess.
Q. Since the time that Baycol was pulled off the market, you did an internet research at that time?

A. Correct.
Q. The internet research that you did, did you keep it? Did you print it out?
A. I might have. I'm not sure.
Q. Where do you think you kept it, at your house?
A. Possibly.
Q. Have you shown that research to anyone?
A. Other than my family?
Q. Right.
A. That would be the only people I would have shown it to.
Q. Did you show it to any physician?
A. No.
Q. Now you have a --
A. My opinion is that --
Q. Let me stop you there.
A. Go ahead.
Q. With respect to the persons in your family, do you have a doctor who is in your family?
A. Yes.
Q. Who is that?
A. Dr. Steven Heartiness.
Q. Dr. Heartiness, have you shown it to him, this material that you got from the internet?
A. I can't recall.

Q. Has Dr. Heartiness told you that Baycol triggered your husband's Parkinson's?
A. I don't recall him doing that.
Q. What sort of doctor is Dr. Heartiness?
A. Surgeon.
Q. You say that there may have been another time where you looked on the internet for information about Baycol and symptoms such as Parkinson's; is that right?
A. And Parkinson's.
Q. What did you find?
A. Not a great deal of information other than general in nature that pretty much people already know about Parkinson's.
Q. What do you mean they know about Parkinson's?
A. I think Parkinson's is generally considered -- my understanding of Parkinson's is that it is a disease that causes physical debilitation and eventual death.
Q. Okay.
A. And pretty much the research on the internet indicates that.
Q. That Parkinson's will eventually lead to death?
A. Uh-huh.
Q. I guess my question was: Had you seen any information -- you told us about the time when Baycol was first withdrawn from the market, that you saw some

information about Parkinson's like symptoms related to Baycol, how about after that, did you see any information about Baycol linked to Parkinson's?

A. No.

Q. How about anything saying Baycol triggered Parkinson's?

A. I've only researched it once or twice. I have not done that continuously.

Q. Has anybody provided you information to indicate that Baycol can trigger Parkinson's?

A. Written information?

Q. Yes, to start with.

A. No.

Q. How about verbally?

A. Excuse me.

Q. How about verbally?

A. I can't recall. I don't recall.

Q. Did you talk to Dr. Ozer about your husband's Parkinson's?

A. Well, I talked to Dr. Ozer about my husband's physical condition, and he diagnosed it as Parkinson's.

Q. Has Dr. Ozer, by the way, have you -- do you know whether Dr. Ozer's deposition has been taken in this case?

A. I don't think Dr. Ozer's in town anymore.